UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STEVEN REED,<br><br>Defendant. | Case No. 21-cr-00479-JSW-1<br><br>**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**<br><br>Re: Dkt. No. 64 |

This matter comes before the Court upon consideration of the motion for compassionate release filed by Defendant Steven Reed ("Reed"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it DENIES the motion.

## BACKGROUND

On December 13, 2021, the Government filed an Information charging Reed with one count of possession of child pornography in violation of 18 U.S.C. sections 2252(a)(4)(2) and (b)(2). On June 21, 2022, Reed entered a guilty plea to the sole count of the Information. The Probation Officer prepared a Pre-Plea Presentence Investigation Report ("PSR") and agreed with the parties' determination that Reed's adjusted offense level was 30. The Probation Officer determined that Reed fell within Criminal History Category I, which resulted in a Guidelines range of 97 to 121 months and recommended a term of 108 months. (Dkt. No. 11, PSR ¶¶ 3, 67-80, 84, 138, Sentencing Recommendation.)

The Government asked for a term of 97 months in custody, and Reed asked for a term of 36 months. The Court sentenced Reed to a term of 110 months to be followed by a ten-year term of supervised release, with special conditions. (Dkt. Nos. 22, 29, Judgment and Amended

Judgment.)

Reed, who is a little over three years into his sentence, moves for compassionate release because his life-partner, Lillian Blade ("Blade") has been diagnosed with malignant glioblastoma, an aggressive form of brain cancer.[1] (Dkt. No. 64-1, Declaration of Anthony Molavi ("Molavi Decl."), ¶ 3; Dkt. No. 64-3, Molavi Decl., Ex. B (Medical Records at 13).)[2] Reed asserts he is Blade's only available and reliable caretaker.

The Court will address additional facts in the analysis.

## ANALYSIS

### A. Applicable Legal Standard.

The Formerly Incarcerated Reenter Society Transformed Safely Transitioning Every Person Act of 2018 (the "First Step Act"), 18 U.S.C. section 3582 ("Section 3582") amended portions of Section 3582. The relevant portion of those amendments provide that:

> [t]he court may not modify a term of imprisonment once it has been imposed except that--
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction;
> …
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

---

[1] Reed's projected release date is August 22, 2030, and he will be eligible for home confinement on February 22, 2030.

[2] When it cites to the Medical Records attached to Exhibit B, the Court is using the number at the bottom of the page.

2

18 U.S.C. § 3582(c)(1)(A)(i). The relevant policy statement is United States Sentencing Guidelines section 1B1.13 ("Section 1B1.13"), which states:

> [t]he court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction;
> …
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

"Congress has not defined what constitutes 'extraordinary and compelling'" reasons; however, it did state that "[r]ehabilitation of the defendant alone" will not meet the standard. *United States v. Rodriguez*, 424 F. Supp. 3d 681 (N.D. Cal. Nov. 25, 2019) (quoting 28 U.S.C. § 994(t)); *see also* U.S.S.G. § 1B1.13(d). Section 1B1.13 sets forth examples of "extraordinary and compelling reasons" that may warrant a sentence reduction, including

> [t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner; or … the defendant establishes circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, 'immediate family member' refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S.S.G. § 1B1.13(b)(3)(B), (D).

Reed bears the burden to show a sentence reduction is warranted. *See, e.g., United States v. Wright*, 46 F.4th 938, 951 (9th Cir. 2022).

**B.    Reed Has Exhausted Administrative Remedies.**

On August 15, 2025, Reed sent a letter to the Warden of FCI Seagoville a letter requesting compassionate release or a furlough to care for Blade. (Molavi Decl., ¶ 2; Dkt. No. 64-2, Molavi Decl., Ex. A.) As of September 19, 2025, Reed had not received a response from the Warden. The Government does not dispute that Reed has exhausted his administrative remedies.

3

### C. The Court Denies the Motion.

Reed does not submit evidence that he and Blade are married or that they have been registered as domestic partners. Therefore, Reed has not met his burden to show that Section 1B1.13(b)(3)(B) applies. However, the record supports a conclusion that his relationship with Blade is like that of a spouse or domestic partner. (*See, e.g.,* Presentence Investigation Report, ¶ 96; Molavi Decl., ¶¶ 22, 37; Dkt. No. 65, Letter from Susan Sharkey).) The Court will evaluate his motion under Section 1B1.13(b)(3)(D).

The Government argues that Reed fails to meet his burden to show that Blade is incapacitated and that he is her only available caretaker. In late July and early August 2025, Blade had a home health aide assisting her two days a week. (Medical Records at 13, 18.) A doctor's note dated August 4, 2025, stated that Blade's medical condition required "caregiver assistance 7 days per week, up to 24 hours per day, until 10-31-2025." (*Id.* at 21.) Blade also submitted a letter to the Court that she states was drafted with the aid of a friend. In that letter, she notes her finances prevent her from having full-time help or from moving to an assisted living facility. (Dkt. 68.) Reed's nephew also provided additional information relating to Blade's financial circumstances. (Dkt. No. 73-1, Reply Declaration of Anthony Molavi, ¶¶ 5-28.) Recent medical records show Blade does not have an in-home caregiver, although Blade's sister asked a social worker to be the primary contact. (Dkt. No. 74, Declaration of Lisa Ma, Ex. E (Medical Records at ECF pp. 35, 81-82.)

The Bureau of Prisons ("BOP") provides guidance of the term "incapacitated," which it defines as "a serious injury, or a debilitating physical illness and the result of the injury or illness is that the [family member] is completely disabled, meaning that [they] cannot carry on any self-care and is totally confined to a bed or a chair." *See* BOP Program Statement § 5050.50 at 10 (Jan. 17, 2019). The BOP also defines the term "incapacitated" to mean a family member has "[a] severe cognitive deficit (e.g., Alzheimer's disease or traumatic brain injury that has severely affected [their] mental capacity or function), but may not be confined to a bed or chair." *Id.*

Blade struggles with numbness and weakness because of the tumor and does require

4

assistance with daily activities, such as showering and driving. On August 6, 2025, during a radiation oncology visit, the doctor stated Blade was "ambulatory and capable of all self care but unable to carry out any work activities." (*Id.* at 24.) Reed's nephew reported that, in October 2025, Blade could not get up from a couch, a bed, or a toilet without physical help.

Blade also has been hospitalized twice for issues unrelated to her brain tumor, and during that time she has not been receiving chemotherapy. (Molavi Reply Decl., ¶¶ 12-17; Ex. E (Medical Records at ECF p. 74).) In a report from one of those hospital stays, an occupational therapist reported Blade did not demonstrate the minimal instrumental activities of daily living to live alone. (Ex. E, Medical Records at ECF p. 81.)

As of August 6, 2025, Blade understood her doctor's recommendations regarding treatment and "asked many thoughtful questions." (Ex. B (Medical Records at 26).) Her medical records from September 2025 continue to show she was "ambulatory and capable of all self care but unable to carry out any work activities." The neurological section of that report described her as "[a]lert, normal speech, no focal findings." (Dkt. No. 70, Declaration of Lisa Ma, ¶ 2, Ex. C (Medical Records at ECF pp. 3-4).) Blade's medical records from early November 2025 also show she was "alert and oriented" but had some impaired short-term memory. (Ex. E (Medical Records at ECF p. 44; *see also id.* at ECF p. 66, 79.) Her most recent medical records show that she would be discharged to a skilled nursing facility based on the lack of in-home care and based on her needs.

Even if Blade's condition does not fall squarely within the BOP's definition of incapacitated, it comes close. The Court concludes that Reed has met his burden to show the reasons he seeks release are extraordinary and compelling and are consistent with Section 1B1.13.

That does not end the Court's inquiry, because Reed still must show he is not a danger to the community under 18 U.S.C. section 3142(g). The Court also must consider whether the Section 3553(a) factors warrant a reduction. Reed had no prior record, complied with his pretrial conditions of release, and self-surrendered after sentencing. *See, e.g.*, 18 U.S.C. §§ 3142(g)(3)(B), 3142(g)(4); 3553(a)(1). Under Section 3142(g)(2), the Court may consider the weight of the evidence. Based on Reed's guilty plea, that factor does not weigh in his favor. In addition, the

5

crime necessarily involved minors. 18 U.S.C. § 3142(g)(1).

The nature of Reed's offense was serious and, contrary to Reed's views when he was arrested, is not a victimless crime. The seriousness of his offense also was reflected through an upward adjustment based on the volume of images and videos he possessed. The Court also considers the need for the sentence it imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; [and] … to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(A)-(C). The Court expressed its views on these factors at sentencing, including the Court's view that Reed is not at risk for reoffending. (Dkt. No. 38, Tr. at 38:18-41:10.) Those views have not changed.

The Court acknowledges that Blade's circumstances are extremely serious, but it concludes that reducing Reed's sentence would neither afford adequate deterrence nor promote just punishment.

Accordingly, the Court DENIES his motion for compassionate release.

**IT IS SO ORDERED**.

Dated: December 23, 2025

_____
JEFFREY S. WHITE
United States District Judge